Filed 3/5/24  In re M.C. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re M.C., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>　　　Plaintiff and Respondent,<br>v.<br>Ashley K.,<br><br>　　　Defendant and Appellant. | A168679<br><br>(Alameda County<br>Super. Ct. No. JD-036148-01) |

　　　Ashley K. (Mother) appeals from an order adjudging her young son, M.C., a dependent minor and placing him in out-of-home care.  Her sole argument on appeal is that reversal is required because of an inadequate inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq., ICWA).  We agree that further inquiry and notice are required and therefore vacate the finding that ICWA does not apply.  In all other respects, the juvenile court's order is affirmed.

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

M.C. came to the attention of respondent Alameda County Social Services Agency (Agency) shortly after he was born one month premature in April 2023[1] showing signs of withdrawal from drugs. A case worker interviewed the parents the day after the boy's birth. Mother at first reported no Native American ancestry, but she soon reported that she had ancestry through the Nez Perce Tribe. The infant's father (Father), who is not a party to this appeal, reported that he had Native American ancestry but did not know the relevant tribe, and his parental notification of Indian status form filed later that month contained the same information.

The Agency filed a juvenile dependency petition around a week and a half after the infant was born alleging that he was a child described by Welfare and Institutions Code section 300,[2] subdivisions (b) (failure to protect) and (g) (no provision for support). The petition's attached Indian Child Inquiry form (ICWA-010(A)) indicated there was no reason to believe the infant was or may be an Indian child.

According to the detention report dated April 23, Father did not want the Agency to contact his parents (the paternal grandparents) about Agency involvement since he did not want his parents to know that Mother had tested positive for methamphetamines. Mother reported that she had family in Southern California, but the detention report did not include names or further detail.

---

[1] All date references are to the 2023 calendar year.

[2] All statutory references are to the Welfare and Institutions Code.

The first thing the juvenile court did at the detention hearing after appointing counsel for Mother, Father, and M.C., was ask both parents about possible Native American ancestry. Mother said she was aware of affiliation with the Nez Perce Tribe but reported she was not registered with the tribe. Father said his mother had told him of Native American ancestry but he did not know the relevant tribe. The court ordered that the parents complete ICWA-020 forms so that notices could be provided to tribes. After discussion of other issues, the infant was ordered detained.

In early May the Agency provided notice of the proceedings to the Sacramento office of the Bureau of Indian Affairs (BIA) and the Nez Perce Tribe. The notice stated that M.C. might be eligible for membership in the Nez Perce tribe through Mother. The form listed Mother's and Father's names and birthdates, but no information was provided about grandparents or any other relatives. Later in May the Agency provided the Nez Perce Tribe with notice of a scheduled May 31 jurisdiction/disposition hearing.

The disposition report dated May 31 includes additional information about M.C.'s extended family. Mother reported that her mother (the maternal grandmother, whose last name is different from Mother's) was half Native American with the Nez Perce Tribe. The report does not specifically indicate whether the maternal grandmother is still alive, though it suggests that she might not be. Mother said she was raised primarily by her paternal grandmother, who had died a few years ago. The report also includes the names of Mother's brother, sister, and father, as well as the cities where they live. Father reported that his parents and two sisters live in the Bay Area, though their names are not listed in the disposition report. Father said his family knew about M.C. and had asked to see him, but he had not told them about Agency involvement, which was "difficult for him." The report asked

the juvenile court to make a finding that the whereabouts of any grandparents was unknown. This appears contrary to the report's statements that Mother's father knew about the Agency's involvement with her family and supported her efforts to treat her substance abuse, and that Father was in frequent contact with his parents.

ICWA was not discussed during two brief hearings held in May. In June, the Agency filed return receipts indicating the Sacramento BIA office and the Nez Perce Tribe both had received notice. It also filed a letter from the Nez Perce Tribe stating that neither Mother nor Father were enrolled in the tribe or had "immediate Nez Perce ancestry."

At the jurisdiction/disposition hearing on July 11, the juvenile court found that M.C. was a person described by section 300, subdivisions (b) and (g), adjudged M.C. a dependent child, ordered out-of-home placement for the baby and reunification services for the family, and granted the Agency discretion to allow unsupervised visits with Mother, who was in a residential-treatment program. The court also found that ICWA did not apply. Mother appealed.

## II.
### DISCUSSION

Mother argues that reversal of the ICWA finding is required because an insufficient ICWA inquiry was made of extended family members. We agree.

" 'ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family.' [Citation.] Those standards include notice to Indian tribes in state court proceedings to place a child in foster care or to terminate parental rights 'where the court knows or

has reason to know that an Indian child is involved' (25 U.S.C. § 1912(a); see § 224.1, subd. (d)(1); [citation]); that is, 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.'  (25 U.S.C. § 1903(4); accord, § 224.1, subd. (a).)  'Notice to Indian tribes is central to effectuating ICWA's purpose, enabling a tribe to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter.'  [Citation.]  'Oral transmission of relevant information from generation to generation and the vagaries of translating from Indian languages to English combine to create the very real possibility that a parent's or other relative's identification of the family's tribal affiliation is not accurate.  Accordingly, just as proper notice to Indian tribes is central to effectuating ICWA's purpose, an adequate investigation of a family member's belief a child may have Indian ancestry is essential to ensuring a tribe entitled to ICWA notice will receive it.'  [Citation.]

"The Legislature enacted changes to the Welfare and Institutions Code, effective January 1, 2019, to conform its statutes to recent changes in federal ICWA regulations, which now require state courts to ask each participant in a child custody proceeding whether the participant knows or has reason to know if a child is an Indian child (25 C.F.R. § 23.107(a) (2022)).  [Citation.] The ICWA investigatory process under state law is now expansive and potentially onerous.  The juvenile court and social services agency 'have an affirmative *and continuing* duty to inquire whether' a minor in dependency proceedings 'is or may be an Indian child.'  (§ 224.2, subd. (a), italics added; [citation].)  'The duty to inquire begins with the initial contact.'  (§ 224.2, subd. (a).)  If a child is placed into temporary custody of the social services

agency, the agency 'has a duty to inquire whether that child is an Indian child.  Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, *extended family members*, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.'  (§ 224.2, subd. (b), italics added; see Cal. Rules of Court, rule 5.481(a).)"  (*In re S.H.* (2022) 82 Cal.App.5th 166, 173–174 (*S.H.*).)

We agree with Mother that the Agency has not yet complied with these ICWA inquiry duties, although we recognize that these duties are expansive and potentially onerous.  Specifically, there is nothing in the record to demonstrate that the Agency questioned M.C.'s maternal relatives about potential Native American ancestry.  (See *In re A.M.* (2020) 47 Cal.App.5th 303, 322 ["additional inquiry should have, at a minimum, included interviews with Mother's extended family members"]; § 224.2, subd. (b); Cal. Rules of Court, rule 5.481(a).)

The Agency does not focus on its initial inquiry duties under section 224.2, subdivision (b), and instead focuses on the steps that follow it.  If, after the initial inquiry, "the court [or] social worker . . . has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court [or] social worker . . . shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable."  (§ 224.2, subd. (e).)  The Agency contends that it satisfied this duty when it "contacted the relevant tribe with the information it had at the time and received a definitive response, rendering further inquiry unnecessary."  According to the Agency, "Nothing in the

record suggests that, at that point in time [when it sent notices to the Nez Perce Tribe], the parents had provided the Agency with any more information about the family.  Rather, the names and detailed location of Mother's family members first appear in the record on the disposition report filed three weeks after the notice was sent."  This argument ignores that the Agency has a *continuing* duty to inquire whether M.C. is or may be an Indian child.  (§ 224.2, subd. (a).)  We commend the trial court and the Agency for taking prompt steps to inquire about the parents' potential Native American ancestry, and we acknowledge it was no doubt challenging to receive inconsistent and incomplete responses.  But ICWA and state law impose an ongoing duty to determine potential Native American ancestry and does not stop once a social services agency takes initial steps to comply.

We accept that the Agency is not required " 'to cast about' for investigative leads" and need not inquire further if a parent withholds information (as Father apparently did when he said he does not want the Agency to contact his family).  (*In re A.M.*, *supra*, 47 Cal.App.5th at p. 323.)  But the record here reveals that there are known maternal relatives who have not been questioned.  And even if no additional information is learned from maternal relatives on remand, the Agency must still provide additional ICWA notice with the information it learned (the maternal grandmother's name) after it previously provided notice.  It does not matter, as the Agency argues, that M.C. would not appear eligible for membership in the Nez Perce Tribe even if the maternal grandmother had a connection to the tribe since the tribe's letter stated that "an individual must have at least 1/4 Nez Perce blood" in order to be an enrolled member.  "A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community."  (*Santa Clara Pueblo v.*

*Martinez* (1978) 436 U.S. 49, 72, fn. 32; see also *In re S.R.* (2021) 64 Cal.App.5th 303, 316 [tribal membership determined by tribes, not courts or social services agencies].)

The parties disagree about the appropriate disposition upon a finding that the Agency has not yet fully complied with ICWA.  Mother argues that this court should reverse the finding that ICWA does not apply, whereas the Agency contends that we should find that the issue is not ripe for review.  (*In re T.R.* (2023) 87 Cal.App.5th 1140, 1154.)  In *S.H.*, *supra*, 82 Cal.App.5th 166, this court held that "when a social services agency accepts its obligation to satisfy its inquiry obligations under ICWA, a reversal of an early dependency order is not warranted simply because a parent has shown that these ongoing obligations had not yet been satisfied as of the time the parent appealed." (*Id.* at p. 171.)  Here, the Agency has not conceded error or acknowledged its duty to question, to the extent possible, relatives identified after it first sent ICWA notice, or to provide the Nez Perce Tribe with information about the maternal grandmother.  Under these circumstances, we find it appropriate to take the approach outlined in *In re Dominick D.* (2022) 82 Cal.App.5th 560, 567–568.  That is, we "vacate the finding that ICWA does not apply, but we otherwise affirm and direct the juvenile court on remand to order [the Agency] to comply with its inquiry and . . . notice obligations under ICWA and related California law." (*Ibid.*)

## III.
### DISPOSITION

The finding that ICWA does not apply is vacated, and the Agency is directed to comply with its ongoing duties under ICWA.  In all other respects, the juvenile court's order is affirmed.

_____

Humes, P.J.

WE CONCUR:


_____

Banke, J.


_____

Langhorne Wilson, J.


*In re M.C.* A168679